UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**RON L.,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civ. No. 20-10081 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Ron. L. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Plaintiff was not disabled within the meaning of the SSA from March 20, 2017, through September 3, 2019, the date of the decision. Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

For the reasons explained below, I find that the ALJ properly assessed Plaintiff's subjective complaints of pain and residual functional capacity ("RFC"), and affirm those portions of the decision. I agree with Plaintiff, however, that the ALJ did not adequately consider all of his severe impairments at step three, and therefore will remand for reconsideration of that issue.

**I.   BACKGROUND**[1]

Plaintiff applied for DIB in August 2017, alleging disability as of March 20, 2017. (R. 671–74.)  His application was denied initially and on

---

[1] Certain citations to the record are abbreviated as follows:
    "DE __" = Docket entry in this case
    "Pl. Br." = Plaintiff's brief (DE 12)
    "Def. Br." = The Commissioner's brief (DE 13)
    "R. __" = Administrative Record (DE 7)

1

reconsideration. (R. 565, 578.) Plaintiff then requested and obtained a hearing before an ALJ, at which he was represented by counsel. (R. 533–64, 605.) On September 3, 2019, ALJ Costa issued a decision denying disability at step five of the sequential evaluation, finding that, although Plaintiff could no longer perform his past relevant work, he is capable of adjusting to certain sedentary work that accommodates his limitations and exists in significant numbers in the national economy. (R. 260–69.)

The Appeals Council denied Plaintiff's request for review on June 9, 2020, rendering the ALJ's decision final. (R. 1–7.)[2] Plaintiff now appeals that decision pursuant to 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(c).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR § 404.1520. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

---

[2] The Appeals Council permitted Plaintiff to submit additional evidence on appeal, some of which predated and some of which postdated the ALJ's September 3, 2019, decision. (R. 2.) The Appeals Council concluded that the pre-September 3, 2019, evidence "does not show a reasonable probability that it would change the outcome of the decision" and thus "did not exhibit this evidence." (*Id.*) It further found that the post-September 3, 2019, evidence did not impact the ALJ's findings because "[t]his additional evidence does not relate to the period at issue." (*Id.*)

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR § 404.1520(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* § 404.1520(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* § 404.1520(d).

**RFC and Step 4:** Determine the claimant's RFC, meaning "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to his prior occupation. 20 C.F.R. § 1520(a)(4)(iv); *id.* § 404.1520(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR § 404.1520(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation

3

omitted).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations.  *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing.  *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007).  Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits.  *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry.  *See Podedworny*, 745 F.2d at 221–22.  Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings.  *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.").  It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Costa undertook the five-step inquiry.  His conclusions are summarized as follows:

### Step 1

Although Plaintiff attempted to work after March 20, 2017, the alleged disability onset date, the ALJ deemed this an "unsuccessful work attempt" because Plaintiff worked for less than six months and there had been a "significant break in the continuity of work prior to [his] attempted return." (R. 257–58) (internal quotation marks omitted). Accordingly, the ALJ found that Plaintiff had not engaged substantial gainful activity since the alleged disability onset date and proceeded to the second step. (R. 258.)

### Step 2

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, status-post microdiscectomy of lumbar spine; migraine headaches; obesity; chronic pain syndrome; depression; anxiety and attention deficit disorder ("ADD"). (*Id.*)

### Step 3

At step three, the ALJ concluded that Plaintiff's impairments, considered individually and in combination, did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) First, the ALJ found that Plaintiff did not meet Listing 1.04, Disorders of the Spine, because his coordination and gait were "normal" and there was no evidence of motor, sensory, or reflex deficits, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (*Id.*) (internal quotation marks omitted).

Second, while the record indicated that Plaintiff had a Body Mass Index ("BMI") of 30.5, which is considered "obese," the ALJ concluded that his obesity, considered in combination with his other impairments, did not result in functional limitations medically equaling the severity of a listed impairment. (*Id.*)

Third, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04, Depressive, Bipolar, and Related Disorders, or 12.06, Anxiety and Obsessive-Compulsive Disorders, because they did not cause one "extreme" or two "marked" limitations in broad areas of

functioning. (R. 259–60.) The ALJ evaluated each area of functioning individually, concluding that Plaintiff had no more than mild or moderate limitations. (*Id.*)

The ALJ also noted in passing that he had considered whether Plaintiff's impairments satisfied Listing 12.11, Neurodevelopmental Disorders, but did not expand on his analysis. (*Id.*)

### RFC and Step 4 – Ability to Perform Past Work

The ALJ determined that Plaintiff had the RFC to perform sedentary work, subject to certain restrictions. (R. 260.) Specifically, Plaintiff could, among other things, sit for up to six hours in an eight-hour workday, albeit for no more than a half-hour at a time, occasionally climb ramps and stairs, and occasionally push and pull controls. (*Id.*) Plaintiff had to use a cane when ambulating more than 50 feet or on uneven terrain. (*Id.*) He also could only understand, remember, and carry out simple instructions, with occasional changes in essential job functions, and make only simple work-related decisions. (*Id.*)

In so finding, the ALJ noted that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged physical and mental symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 262.)

With respect to Plaintiff's physical impairments, the record indicated that Plaintiff had a "long-standing history of neck, mid back and lower back pain" that was "exacerbated by a motor vehicle accident on March 20, 2017." (R. 263) (internal quotation marks omitted). In March 2018, Plaintiff underwent a microdiscectomy procedure. (*Id.*) Following his surgery, Plaintiff reported experiencing lower extremity pain but noted that his "bilateral [surgical] wounds [were] healing well." (*Id.*) (internal quotation marks omitted). Plaintiff's pain management specialist Stephen Wade, M.D., prescribed him pain medication and "recommended left L4-S1 transforaminal epidural injections for

severe radiating left leg pain." (R. 264) (internal quotation marks omitted). During a physical examination on February 18, 2019, Plaintiff presented with a "'normal' gait and response to palpation, no 'trigger points,' and '5/5' muscle strength" in his joints. (*Id.*) Pain, however, was noted on cervical rotation to the right and left. (*Id.*) These findings remained unchanged on August 2, 2019. (*Id.*)

The record further indicated that Plaintiff sought treatment for "daily headaches." (*Id.*) He reported that his headaches were "'associated with phonopohobia and photophobia,'" but he did not experience headache-related nausea, vomiting, "'focal motor deficits or dysesthesias,'" or coordination or gait issues. (*Id.*) During a November 3, 2017, examination, Plaintiff's treating neurologist Charles Asta, M.D., noted that Plaintiff was "'not in any apparent physical distress.'" (*Id.*) Thereafter, Plaintiff underwent Botox treatment, reporting "'noticeable improvement'" in his headache symptoms on January 5, 2018. (*Id.*) While Plaintiff reported "'less and less benefit from each Botox injection'" in October 2018, by February 9, 2019, Plaintiff had experienced mild to moderate improvement in his headache symptoms after receiving monthly injections of Emgality. (R. 264–65). On June 14, 2019, Plaintiff reported experiencing an approximately 40% improvement in his headache symptoms. (R. 266.)

The ALJ also considered Plaintiff's mental impairments. The record established that on January 4, 2017, Plaintiff presented to psychiatrist Roy Bachar, M.D., with complaints of anxiety and insomnia related to chronic pain and financial issues. (R. 265.) On mental status examination, Plaintiff displayed an anxious mood, mildly-frustrated affect, but was "'overall euthymic, full range, reactive, appropriate'" with "'linear, goal directed'" thought processes. (*Id.*) He was diagnosed with mood and anxiety disorders due to chronic pain and prescribed medication. (*Id.*)

Following this examination, Plaintiff continued to report anxiety related to pain and financial issues, as well as fatigue and insomnia, but "denied

depression 'and/or depressed mood'" in August 2018. (R. 265–66.) On June 14, 2019, Dr. Asta "'noted stabilization of his many conditions,'" and Plaintiff indicated that while he still experienced anxiety, medication had "'provided a strong base of control'" for the condition. (R. 266.)

In assessing Plaintiff's RFC, the ALJ reviewed the opinions of both Plaintiff's chiropractor Sharon Mariniello, D.C., and the state agency consultants, but found them to be inconsistent with the record evidence. (R. 266–67.) The ALJ concluded that Plaintiff had greater physical limitations than those expressed in these opinions. (*Id.*) He also found, contrary to the state consultants, that the record supported only a "mild," as opposed to "moderate," mental limitation in the area of interacting with others. (R. 267.)

Based on these findings, the ALJ concluded at step four that Plaintiff was unable to perform his past relevant work as a software sales representative or graphic sales representative. (R. 268.)

### Step 5

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform." (*Id.*) Relying on testimony from a vocational expert, the ALJ concluded that Plaintiff was capable of performing the requirements of a table worker, a document preparer, and an order clerk. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the SSA. (*Id.*)

### C. Plaintiff's Challenge

Plaintiff advances three primary arguments on appeal: (1) the ALJ failed to adequately consider all of his physical and mental impairments individually and in combination at step three; (2) the ALJ improperly evaluated his subjective complaints of pain; and (3) the RFC assessment is not supported by substantial evidence. I address each argument in turn.

### 1. Step Three Analysis

Plaintiff contends that the ALJ erred at step three by (1) failing to properly consider his migraine headaches, chronic pain syndrome, spinal

disorder, and obesity; and (2) disregarding certain evidence when evaluating his mental impairments. As I am persuaded by the first argument insofar as it concerns migraine headaches and chronic pain syndrome, I will remand for reconsideration of step three.

With respect to the first assignment of error, Plaintiff argues that the ALJ failed to analyze his migraine headaches, chronic pain syndrome, and cervical and thoracic spinal disorder at step three, and only discussed his obesity in conclusory fashion. Pl. Br. at 12–22. At step three, "the ALJ was required to determine whether any of a claimant's impairments, alone or in combination with other impairments, meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1." *Paladino v. Saul*, No. 18-15459, 2020 WL 525864, at *5 (D.N.J. Jan. 31, 2020). If the claimant's condition meets or medically equals a listed impairment, he is considered disabled and entitled to an award of benefits. *Id.*

Here, the ALJ's step three determinations regarding Plaintiff's migraine headaches and chronic pain syndrome are not supported by substantial evidence. Although the ALJ found both impairments to be severe at step two, he failed to mention Plaintiff's migraine headaches at all at step three, and only cursorily referenced Plaintiff's chronic pain in relation to Plaintiff's mental impairments. (R. 260.) The Commissioner offers no response to this portion of Plaintiff's argument, and courts have remanded for further analysis in similar circumstances. *See Ibanibo v. Comm'r of Soc. Sec.*, No. 11-3822, 2012 WL 2945748, at *7 (D.N.J. July 18, 2012) (finding ALJ's failure to discuss all severe impairments at step three warranted remand); *Smith v. Comm'r of Soc. Sec. Admin.*, No. 18-00697, 2019 WL 1349733, at *4 (D.N.J. Mar. 26, 2019) (remanding where "the ALJ found Plaintiff's hidradenitis suppurativa severe at step two" but "never mentioned it at step three"). I express no view on what the ALJ's findings should be on remand, and note only that the ALJ shall make such findings in a manner that permits meaningful judicial review.

9

Because the ALJ must consider the combined effects of all of Plaintiff's impairments in evaluating disability at step three, and the ALJ has not made judicially-reviewable determinations as to the effects of Plaintiff's migraine headaches and chronic pain syndrome, I will not rule definitively on Plaintiff's remaining step three arguments at this time.  I do, however, make the following observations.  Contrary to Plaintiff's assertions, the record indicates that the ALJ did in fact consider both his obesity and cervical and thoracic spinal disorder at step three.  Indeed, as to obesity, the ALJ explained that while Plaintiff's BMI qualified as "obese," his obesity, considered in combination with his other impairments, "has not resulted in functional limitations that medically equal the severity of a listing, *for the reasons stated above*." (R. 258) (emphasis added).  In the immediately preceding paragraph, the ALJ explained that while there was evidence of spinal tenderness and limited range of motion "'secondary to pain,'" Plaintiff did not show signs of motor, sensory, or reflex deficits, and he retained a normal gait and coordination.  (*Id.*)  The ALJ's finding indicates that despite his obesity, Plaintiff did not display functional limitations that equaled the severity of a listing.  Plaintiff does not identify any evidence that the ALJ failed to consider in evaluating the effects of his obesity. *See* Pl. Br. at 17–21.

Plaintiff's contention that the ALJ ignored evidence of his cervical and thoracic spinal disorder is similarly unsupported by the record.  As the Commissioner correctly notes, the ALJ expressly stated that he considered "evidence of degenerative changes, disc bulging and/or herniated discs in the cervical, thoracic and lumbar spine" in his analysis of Listing 1.04, Disorders of the Spine.  (R. 258.)  After examining this evidence, the ALJ concluded that Plaintiff's condition did not meet or medically equal Listing 1.04 because there was no evidence of motor, sensory, or reflex deficits, spinal arachnoiditis, or an inability to ambulate effectively, as required under the Listing.  Indeed, by Plaintiff's own admission, the ALJ's "decision acknowledges all of [the evidence relating to Plaintiff's spinal disorder]," and he offers no specific explanation as

to why the ALJ should have drawn a different conclusion from the record. Pl. Br. at 22.

Finally, I note that Plaintiff's argument that the ALJ failed to consider certain evidence in the mental impairments analysis has some merit. Specifically, Plaintiff contends that the ALJ did not account for his anxiety, depression, migraine headaches, and chronic pain syndrome when evaluating his ability to understand, remember, or apply information and concentrate, persist, or maintain pace. Pl. Br. at 22–23. As explained above, the record indicates that the ALJ did not properly consider Plaintiff's migraine headaches and chronic pain syndrome at step three. On remand, the ALJ shall consider these conditions—both alone and in combination with all of Plaintiff's other impairments—to determine whether Plaintiff meets or medically equals a Listing.

However, to the extent Plaintiff asserts that the ALJ disregarded evidence of his anxiety and depression, that argument is not supported by the record. Indeed, with respect to Plaintiff's anxiety, the ALJ specifically cited records from a January 4, 2017, psychiatry visit for, among other things, "'anxiety.'" (R. 259) The ALJ noted that while Plaintiff's "'mood was anxious'" and "'affect mildly frustrated,'" he was "'overall euthymic, full range, reactive, appropriate,'" with "'linear, goal directed'" thought processes. (*Id.*) Accordingly, the ALJ found that this evidence supported only a "moderate" limitation in the understanding, remembering, and applying information area of functioning. (*Id.*)

With respect to Plaintiff's depression, Plaintiff correctly notes that the ALJ did not specifically mention this condition when summarizing his findings for the understanding, remembering, and applying information and concentrating, persisting, or maintaining pace areas of functioning. However, a holistic review of the mental impairment analysis indicates that the ALJ did in fact consider evidence of Plaintiff's depression. The ALJ observed that while Plaintiff endorsed symptoms of depression at the hearing, and was diagnosed with recurrent major depressive disorder on January 19, 2018, he had "denied

11

depression . . . or other psychiatric symptoms" in June 2019.  (R. 260.) Plaintiff does not identify any record evidence of depression that the ALJ failed to consider or otherwise explain how the evidence the ALJ did consider should have resulted in a greater limitation finding.

Notwithstanding these observations, I will remand for reconsideration of step three, which requires the ALJ to review and reweigh the evidence as a whole. And reconsideration at step three, of course, may necessitate reconsideration of the following steps as well.

### 2. Plaintiff's Subjective Complaints of Pain

Plaintiff next argues that the ALJ improperly evaluated his subjective complaints of pain because: (1) the ALJ's analysis was "templated"; and (2) the ALJ failed to accord his complaints "a high degree of credibility" due to his long work history.  Pl. Br. at 24–29.  I disagree that the ALJ erred in this regard.

Plaintiff's contention that the ALJ's analysis is "templated" is not supported by the record. The Act does not require originality of prose, but it does require that the ALJ analyze the evidence, rather than simply make unsupported, boilerplate findings. I find that the ALJ did so here, and that his findings are supported by substantial evidence.

Under the SSA, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A). To be accepted, a claimant's subjective allegations of pain must be supported by "medical signs and findings . . . which show the existence of a medical impairment that . . . could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability."  *Id.*  In evaluating a claimant's complaints, the ALJ must "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

Here, the ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 262.) That single sentence, to be sure, is "templated." In support of this conclusion, however, the ALJ devoted nearly five pages of his decision to summarizing the objective medical evidence, and thoroughly recited the findings of Plaintiff's treatment providers throughout the alleged disability period. (R. 262–66.) The ALJ then acknowledged Plaintiff's alleged symptoms and limitations, but found his subjective allegations "not entirely consistent with the evidence of record." (R. 267.) In so finding, the ALJ explained that although Plaintiff "testified to chronic pain from the time he wakes up until he goes to sleep, and that he is essentially unable to walk," Plaintiff exhibited "no motor, sensory or reflex deficits" and "'normal' coordination and gait" on physical examination. (*Id.*) Furthermore, as to Plaintiff's mental symptoms, the ALJ noted that Plaintiff "denied side effects from psychiatric medications at treatment visits," denied depression in June 2019, and reported that his medications had helped relieve his anxiety symptoms and improve his concentration and wakefulness. (*Id.*) On this record, I cannot agree with Plaintiff's assertion that the ALJ's "decision offers only template." Pl. Br. at 27.

  Plaintiff's argument that his long work history entitles him to a "high degree of credibility" is similarly without merit. While "the Third Circuit has stated that, for a claimant with a long work history, 'testimony as to his capabilities is entitled to substantial credibility,' such testimony nonetheless must be 'supported by competent medical evidence.'" *McLaughlin v. Comm'r of Soc. Sec.*, No. 13-06948, 2014 WL 6886039, at *12 (D.N.J. Dec. 3, 2014) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)). Here, the ALJ twice acknowledged Plaintiff's work history as a software sales representative, loan officer, and graphic sales representative. (R. 261, 268.) As explained above, however, Plaintiff's subjective complaints of pain were belied by objective medical evidence in the record. Thus, it was not error for the ALJ to assign less weight to Plaintiff's subjective complaints of pain in this case.

### 3. RFC Assessment

Finally, Plaintiff argues that the RFC assessment is not supported by substantial evidence because it is "unsourced" and "the product of lay guesswork." Pl. Br. at 31–37. It is possible that, after reconsideration and reweighing the evidence on remand, the ALJ may wish to reconsider the RFC as well, in light of revised findings. Nevertheless, for guidance, I will briefly discuss the RFC in light of the record as it stands currently.

First, contrary to Plaintiff's assertions, the RFC assessment references the record evidence in detail. To support the conclusion that Plaintiff retains the RFC to perform sedentary work with certain limitations, the ALJ cites to a litany of treatment records, disability reports, and hearing testimony. (R. 260–68.) While Plaintiff claims "it is not clear at all why" the ALJ found he could sit for up to six hours per workday with breaks, or must use a cane to ambulate more than 50 feet, the ALJ plainly articulated the basis for this decision. Pl. Br. at 35–36. Citing findings from physical examinations, the ALJ noted that Plaintiff "displayed 'normal' gait and response to palpation, no 'trigger points,' and '5/5' muscle strength 'in all joints.'" (R. 264.) Plaintiff does not dispute these examination findings or otherwise identify any portion of the record the ALJ overlooked in his assessment of Plaintiff's physical limitations.

With respect to his mental limitations, Plaintiff argues that the ALJ failed to account for the effects of his "pain," opioid medications, and migraines in concluding that he could understand, remember, and carry out simple instructions. Pl. Br. at 36. This contention is unsupported by the record. Indeed, the ALJ expressly noted that the RFC is based on the objective medical and other record evidence, and he specifically discussed Plaintiff's chronic pain syndrome, migraine headaches, and medication regimen in the RFC section of the decision. (R. 262–67.) The ALJ observed that Plaintiff reported "noticeable improvement" in his headache symptoms after receiving treatment in December 2017, he "denied side effects from psychiatric medications at treatment visits," and Dr. Asta, Plaintiff's treating neurologist, "noted 'stabilization of his many

14

conditions'" as of June 14, 2019. (R. 264, 266–67). Plaintiff again fails to specify any record evidence that the ALJ disregarded.

Lastly, Plaintiff's contention that the RFC analysis is based on "lay guesswork" is unavailing for two reasons. Pl. Br. at 31, 36. First, Plaintiff's suggestion that the ALJ was not qualified to assess Plaintiff's RFC lacks basis in law. Contrary to Plaintiff's assertion, the Third Circuit has made clear that "[t]he determination of the claimant's RFC is the exclusive responsibility of the ALJ." *See Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546). Second, as explained above, the ALJ relied on documented medical findings and other record evidence to determine Plaintiff's RFC.

Accordingly, in view of the ALJ's detailed RFC analysis, I find the RFC assessment to be supported by substantial evidence. Once again, however, to the extent the ALJ reweighs the evidence on remand, the RFC may require readjustment as well.

## III.  CONCLUSION

For the foregoing reasons, the ALJ's determinations as to Plaintiff's subjective complaints of pain and RFC are affirmed. The ALJ's step three finding is reversed and remanded for further consideration. An appropriate order accompanies this Opinion.

Dated: January 18, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**